FILED
MAR 1 3 2008
MAR. 13, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 08 CR 82  **JUDGE KOCORAS** |
| | ) | |
| v. | ) | Violation: Title 18, United States |
| | ) | Code, Sections 1341, 1346 and 2; |
| DANIEL J. BEALKO and | ) | Title 26, United States Code, |
| ANTHONY DEMETRIUS BROWN, | ) | Section 7201 |
| aka "Tony Brown" | ) | |

**MAGISTRATE JUDGE DENLOW**

COUNT ONE

The SPECIAL JUNE 2007 GRAND JURY charges:

1. At times material to this indictment:

   a. General Motors Corporation ("GM"), headquartered in Detroit, Michigan, produced and sold automobiles in various locations throughout the world. In order to produce its automobiles, GM purchased sizeable quantities of bulk aluminum through various means. In order to minimize its exposure to significant fluctuations in the price of bulk aluminum, GM engaged in various hedging strategies, such as trading in the aluminum commodities futures market and purchasing bulk aluminum at favorable prices for future use by GM. Devising and implementing these hedging strategies was largely the responsibility of GM's Global Commodity Manager for Lightweight Metals (GCM). The execution of commodities future trading activity consistent with GM's hedging strategy was managed by employees in GM's New York Treasury Office, which caused such transactions to be conducted by a variety of futures commission merchants on behalf of GM, typically through the New York Mercantile Exchange and London Metals Exchange.

b.  During the 1990s, GM acquired several hundred million pounds of bulk aluminum from various sources at favorable prices. By approximately the late 1990s, as a result of various business considerations, GM determined to divest itself of a large portion of its bulk aluminum holdings by selling it in the market.

c.  Between approximately 1996 and December 2003, defendant DANIEL J. BEALKO was GM's GCM. Among his various responsibilities, GM entrusted BEALKO with the discretionary authority to devise and implement a plan for GM to divest its extensive bulk aluminum holdings between late 1998 and approximately December 2003. As the GCM, defendant BEALKO owed a fiduciary duty to provide honest services and undivided loyalty to GM in the performance of his duties.

d.  Defendant ANTHONY DEMETRIUS BROWN was the owner of Fuci Metals USA (Fuci) and Commodities Management Exchange (CMX), located in Northfield, Illinois. The principal business of Fuci was buying and selling bulk metal for profit. The principal business of CMX was development and deployment of an internet-based commodities exchange, CMXchange.com, for the auctioning of bulk metal. In addition, defendant BROWN had an interest in a number of sports and entertainment-related businesses, which were principally based in Las Vegas, Nevada, such as CMX Sports & Entertainment, and CMX Productions.

e.  Defendant ANTHONY DEMETRIUS BROWN maintained personal bank accounts and bank accounts for Fuci at Bank One, Wilmette, Illinois.

f.      Carr Futures (now known as Calyon Financial) was a commodities futures and options brokerage, with an office located in New York, New York.

2.      Beginning no later than January 2002, and continuing until approximately December 2003, at Northfield and Wilmette, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DANIEL J. BEALKO and,
> ANTHONY DEMETRIUS BROWN,
> aka "Tony Brown"

defendants herein, devised and participated in a scheme to defraud GM, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and to defraud GM of its intangible right to the honest services of defendant DANIEL J. BEALKO.

3.      It was part of the scheme that defendants DANIEL J. BEALKO and ANTHONY DEMETRIUS BROWN agreed that in exchange for monetary payments ("kickbacks") to defendant BEALKO from defendant BROWN, defendant BEALKO would cause GM to sell bulk aluminum on favorable credit terms to Fuci, which Fuci would sell to third-party buyers for a profit.

4.      It was further part of the scheme that defendants DANIEL J. BEALKO and ANTHONY DEMETRIUS BROWN agreed that defendant BEALKO would locate third parties to buy the bulk aluminum sold by GM to Fuci and negotiate the key terms for such sales with the third parties, such as price, quantity, and date of delivery.

5. It was further part of the scheme that defendants DANIEL J. BEALKO and ANTHONY DEMETRIUS BROWN concealed from GM their agreement to steer GM business to Fuci in exchange for kickbacks from defendant BROWN to defendant BEALKO.

6. It was further part of the scheme that defendant DANIEL J. BEALKO personally retained the kickbacks he received from defendant ANTHONY DEMETRIUS BROWN as secret profits made on the sale of GM's bulk aluminum.

7. It was further part of the scheme that at various times beginning no later than January 2002, and continuing through at least December 2003, defendant ANTHONY DEMETRIUS BROWN made kickback payments to defendant DANIEL J. BEALKO in amounts totaling approximately $ 5,400,000.

8. It was further part of the scheme that defendant ANTHONY DEMETRIUS BROWN made kickback payments to defendant DANIEL J. BEALKO in the form of bank checks issued by Bank One and wire transfers of funds to foreign bank accounts.

9. It was further part of the scheme that during 2002 and 2003, defendant DANIEL J. BEALKO caused defendant ANTHONY DEMETRIUS BROWN to make kickback payments in the form of wire transfers to an account maintained at UBS AG, Zurich, Switzerland.

10. It was further part of the scheme that, in some instances, defendant DANIEL J. BEALKO caused defendant ANTHONY DEMETRIUS BROWN to make

the kickback payments in the form of bank checks payable to defendant BEALKO's relatives.

11. It was further part of the scheme that defendants ANTHONY DEMETRIUS BROWN and DANIEL J. BEALKO established a brokerage account in the name of Fuci at Carr Futures, which defendant BEALKO used to trade aluminum futures and options on aluminum futures contracts. Defendant BEALKO, without the knowledge or authority of GM, pledged assets of GM as security against any losses suffered by Carr Futures in the Fuci brokerage account. In order to provide security for the Fuci account at Carr Futures, defendants BEALKO and BROWN caused warrants for GM-owned aluminum to be delivered to New York and put on deposit with Carr Futures.

12. It was further part of the scheme that defendants ANTHONY DEMETRIUS BROWN and DANIEL J. BEALKO caused profits earned through trading activity in the Fuci account at Carr Futures to be deposited into Fuci's bank account at Bank One.

13. It was further part of the scheme that, in exchange for kickback payments from defendant ANTHONY DEMETRIUS BROWN, defendant DANIEL J. BEALKO caused GM to sell bulk aluminum valued at hundreds of millions of dollars to Fuci on credit, and intentionally failed to reveal to GM his knowledge that Fuci and defendant BROWN presented a serious risk of default to GM.

14. It was further part of the scheme that, rather than repay GM, defendant ANTHONY DEMETRIUS BROWN diverted approximately $80,000,000

that Fuci obtained through the sale of GM's aluminum to items and services for his own personal benefit, and on his sports and entertainment-related business ventures, such as CMX Productions and CMX Sports & Entertainment.

15. It was further part of the scheme that defendants DANIEL J. BEALKO and ANTHONY DEMETRIUS BROWN deprived GM of its right to defendant BEALKO's honest services and to any funds or profits fraudulently obtained by defendants BEALKO and BROWN in connection with the purchase and sale of GM's bulk aluminum by Fuci.

16. It was further part of the scheme that defendants DANIEL J. BEALKO and ANTHONY DEMETRIUS BROWN misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden acts done in furtherance of the scheme and the purposes of those acts.

17. On or about November 17, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DANIEL J. BEALKO, and
> ANTHONY DEMETRIUS BROWN,
> aka "Tony Brown,"

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate and foreign commerce from Illinois to Switzerland, certain writings, signs, signals, and sounds, namely a wire transfer of approximately $300,000 from the Fuci account at Bank One, Illinois, to an account at UBS AG, Zurich, Switzerland, to the attention of "Roland Tobler;"

In violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT TWO

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates paragraphs 1 - 16 of Count One of this indictment as though fully set forth herein.

2. On or about October 10, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

>       DANIEL J. BEALKO, and
>       ANTHONY DEMETRIUS BROWN,
>           aka "Tony Brown,"

defendants herein, for the purpose of executing the scheme to defraud, knowingly caused to be transmitted in interstate and foreign commerce from Illinois to Switzerland, certain writings, signs, signals, and sounds, namely a wire transfer of approximately $400,000 from the Fuci account at Bank One, Illinois, to an account at UBS AG, Zurich, Switzerland, to the attention of "Roland Tobler;"

In violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT THREE

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates paragraphs 1 - 16 of Count One of this indictment as though fully set forth herein.

2. On or about October 3, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DANIEL J. BEALKO, and
> ANTHONY DEMETRIUS BROWN,
> aka "Tony Brown"

defendants herein, caused to be transmitted and transported in interstate commerce, from Illinois to Michigan, a security and money, that is, a Bank One official check, check no. 517329121, payable to Daniel Bealko in the amount of $40,000, knowing that the funds had been taken by fraud;

In violation of Title 18, United States Code, Section 2314 and 2.

## COUNT FOUR

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates paragraphs 1 - 16 of Count One of this indictment as though fully set forth herein.

2. On or about September 5, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DANIEL J. BEALKO, and
> ANTHONY DEMETRIUS BROWN,
> aka "Tony Brown"

defendants herein, caused to be transmitted and transported in interstate commerce, from Illinois to Michigan, a security and money, that is, a Bank One official check, no. 517328762, payable to Daniel Bealko in the amount of $30,000, knowing that the funds had been taken by fraud;

In violation of Title 18, United States Code, Section 2314 and 2.

## COUNT FIVE

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates paragraphs 1 and 3 - 16 of Count One of this indictment as though fully set forth herein.

2. During the calendar year 2002, defendant DANIEL J. BEALKO was a resident of Michigan, and had a taxable income of, at least, $1,347,000.

3. Upon said taxable income, defendant DANIEL J. BEALKO owed to the United States of America income tax of, at least, approximately $490,000.

4. By reason of this income, defendant DANIEL J. BEALKO was required by law, following the close of the calendar year 2002, and on or before April 15, 2003, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

5. Throughout calendar year 2002, continuing to on or about April 15, 2003, in the Northern District of Illinois,

DANIEL J. BEALKO,

defendant herein, well knowing all of the foregoing facts, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the 2002 calendar year by committing the following affirmative acts of evasion:

   a. causing Anthony Demetrius Brown to wire transfer kickback payments from Illinois to an account maintained at UBS AG, Zurich, Switzerland, to the attention of "Roland Tobler";

b.  causing Anthony Demetrius Brown to transmit from Illinois kickback payments in the form of official bank checks, rather than checks payable to BEALKO issued directly from the bank accounts of Fuci or Brown;

c.  causing Anthony Demetrius Brown to transmit from Illinois large kickback payments that had been split into multiple checks so that defendant BEALKO could make smaller deposits of such funds into separate bank accounts;

d.  filing a Federal income tax return which falsely reported his taxable income as approximately $66,063; and

e.  failing to pay approximately $479,098 to the Internal Revenue Service, the additional tax due and owing on his true taxable income;

In violation of Title 26, United States Code, Section 7201.

## COUNT SIX

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates paragraphs 1 and 3 - 16 of Count One of this indictment as though fully set forth herein.

2. During the calendar year 2003, defendant DANIEL J. BEALKO was a resident of Michigan, and had a taxable income of, at least, $4,535,000.

3. Upon said taxable income, defendant DANIEL J. BEALKO owed to the United States of America income tax of, at least, approximately $1,562,000.

4. By reason of this income, defendant DANIEL J. BEALKO was required by law, following the close of the calendar year 2003, and on or before April 15, 2004, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

5. Throughout calendar year 2003, continuing to on or about April 15, 2004, in the Northern District of Illinois,

DANIEL J. BEALKO,

defendant herein, well knowing all of the foregoing facts, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the 2003 calendar year by committing the following affirmative acts of evasion:

 a. causing Anthony Demetrius Brown to wire transfer kickback payments from Illinois to an account maintained at UBS AG, Zurich, Switzerland, to the attention of "Roland Tobler";

   b.  causing Anthony Demetrius Brown to transmit from Illinois kickback payments in the form of official bank checks, rather than checks payable to BEALKO issued directly from the bank accounts of Fuci or Brown;

   c.  causing Anthony Demetrius Brown to transmit from Illinois large kickback payments that had been split into multiple checks so that defendant BEALKO could make smaller deposits of such funds into separate bank accounts;

   d.  filing a Federal income tax return which falsely reported his taxable income as approximately $100,321; and

   e.  failing to pay approximately $1,543,977 to the Internal Revenue Service, the additional tax due and owing on his true taxable income;

  In violation of Title 26, United States Code, Section 7201.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2007 GRAND JURY further charges:

1. The allegations contained in Counts One through Six of this Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of their violations of Title 18, United States Code, Section 1341, as alleged in the foregoing Indictment,

> DANIEL J. BEALKO, and
> ANTHONY DEMETRIUS BROWN,
> aka "Tony Brown,"

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense(s).

3. The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to funds in the amount of $83,000,000.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants

    (a) Cannot be located upon the exercise of due diligence;

    (b) Has been transferred or sold to, or deposited with, a third party;

    (c) Has been placed beyond the jurisdiction of the Court;

  (d) Has been substantially diminished in value; or

  (e) Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
F O R E P E R S O N

_____
UNITED STATES ATTORNEY